MICHAEL JAMES ROE, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 25805

May 30, 1996                                                917 P.2d 959

*Michael R. Specchio,* Public Defender and *John Reese Petty,* Chief Appellate Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

On February 13, 1994, Reno police officers responded to a local residential motel on a report of possible child neglect. In the motel room, the officers found Michael and Ann Roe and their two children, Stephanie (two and one-half years old) and Jessica (six months old). The motel room was filthy, with garbage and dirty clothes everywhere. The officers examined Stephanie and found numerous burns and bruises on her body, what appeared to be an adult bite wound on her left shoulder and swelling and bruising to her forehead. Jessica showed no signs of physical trauma. Stephanie was transported to the hospital, and it was discovered that she had a fractured rib. Michael and Ann were arrested and charged with child abuse and neglect.

Pursuant to plea negotiations, Michael pleaded guilty to one count of child abuse causing substantial bodily harm to Stephanie. The remaining two charges of willfully endangering a child as the result of neglect were dropped. Michael was sentenced to twelve years in the Nevada State Prison and was ordered to pay "restitution in an amount to be determined by the Division of Parole and Probation." Although the order for restitution is vague, the Division of Parole and Probation indicated that restitution was to include the costs of medical attention for Stephanie, as well as the costs of foster care. The restitution would be paid, in part, to the Washoe County Social Services Department and the remainder to the State Welfare Department.

On appeal, Michael challenges the portion of his sentence which orders restitution. First, he argues that a state agency cannot be considered a victim for purposes of restitution pursuant

to NRS 176.033(1).[1] In support of his argument, Michael points to NRS 213.005(2) which, at the time of sentencing, defined victim as "(a) A person against whom a crime has been committed; (b) A person who has been injured or killed as a direct result of the commission of a crime; or (c) A relative of a person described in paragraph (a) or (b)."[2] The definition of victim in NRS 213.005 is not cross-referenced in NRS 176.033, and no definition of victim appears in Chapter 176. This court has considered this very issue in a recent opinion. Igbinovia v. State, 111 Nev. 699, 895 P.2d 1304 (1995). This court concluded, in *Igbinovia*, that a police department that expended money to set up a drug transaction was not a "victim" of crime and therefore was not entitled to restitution based on the money expended. 111 Nev. at 706, 895 P.2d at 1308. "We are persuaded that the word 'victim' has commonly-understood notions of passivity, where the harm or loss suffered is generally unexpected and occurs without the voluntary participation of the person suffering the harm or loss." *Id.* However, this court went on, "it is not without any foundation in logic that the government might fall under the wording of subsection 2(a) [sic] of NRS 213.005 (defining 'victim' as one 'who has been injured . . . as a direct result of the commission of a crime')." *Id.* It would be a drastic over-simplification of the holding in *Igbinovia* merely to state that a governmental agency cannot be considered a victim for the purposes of restitution. The rule announced in *Igbinovia* is a narrow one, tailored specifically to cases where law enforcement agencies have expended money to conduct undercover drug buys. Whether the state or a state agency is a victim for purposes of restitution will depend on the facts of each case.

The state agencies involved in the instant case can be considered "victims" for the purposes of restitution for two reasons. First, they qualify under the reasoning set forth in *Igbinovia, i.e.,* the harm or loss suffered was unexpected and occurred without the voluntary participation of the agencies suffering the harm or loss. Second, the money expended by the agencies was for the benefit of the children in this case, the true victims of Michael's criminal conduct. Reimbursing the agencies for the money expended is analogous to making restitution to a guardian acting on behalf of the children. In sum, we conclude that in the instant

[1]NRS 176.033(1)(c) provides, in pertinent part, that the district court shall "[i]f restitution is appropriate, set an amount of restitution for each victim of the offense."

[2]NRS 213.005(2) was amended in 1995, and paragraph (a) now includes governmental entities against whom a crime has been committed. *See* 1995 Nev. Stat. ch. 630, §232 at 2389.

case, an order of restitution is appropriate, even though that restitution will be paid to state agencies.

Michael also contends that, even if an order of restitution was appropriate, the district court erred because the amount of restitution was not specified, but instead was "to be determined by the Division of Parole and Probation." We agree. NRS 176.033(1)(c) provides, in part, that if restitution is appropriate, the district court shall "set an amount of restitution for each victim of the offense." This court has held that "[t]he statute contemplates that the district court will set a specific dollar amount of restitution. The statute does not allow the district court to award restitution in uncertain terms." Botts v. State, 109 Nev. 567, 569, 854 P.2d 856, 857 (1993). The order of restitution in the instant case must therefore be vacated and the case remanded so that the district court can determine a specific dollar amount of restitution, as required by NRS 176.033(1)(c).[3]

In conclusion, we affirm the district court's determination that Michael must pay restitution, but we vacate the order of restitution and remand the case for further proceedings in accordance with the foregoing.

---

[3]This court has held that "a defendant may be ordered to pay restitution only for an offense that he has admitted, upon which he has been found guilty, or upon which he has agreed to pay restitution." Erickson v. State, 107 Nev. 864, 866, 821 P.2d 1042, 1043 (1991). We note that, according to the record, Michael has admitted to abusing Stephanie, but has admitted no wrongdoing regarding Jessica. Further, the record does not show that he has agreed to pay restitution, so it would appear that the order of restitution could only include medical and foster care expenses for Stephanie. As to the expenses incurred by the state agencies relating to Jessica, the state could, of course, proceed pursuant to NRS 432.085, which allows the state to recover (from parents) the cost of maintenance and special services provided to children who are placed in the state's custody.