# IN THE SUPREME COURT OF THE STATE OF NEVADA

AMY ZORAH MCDERMOTT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79296

FILED

NOV 13 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of failure to stop at the scene of a crash involving death.[1] Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge. Appellant Amy McDermott raises five issues on appeal.

### Sufficiency of the evidence

McDermott argues that insufficient evidence supports her conviction. Specifically, she argues that the evidence did not prove that she was driving the vehicle that hit the victim, as the driver was not seen in the video surveillance or by the eyewitnesses, both her daughter and her boyfriend also had access to her vehicle, and her daughter and other witnesses provided inconsistent testimony and were not credible. When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, this court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson*

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

20-41501

*v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not disturb a verdict supported by substantial evidence. *Id.*

The evidence at trial showed that a black SUV hit the victim, who was walking on the side of the road, rolled over her body, and drove off without stopping. Based on an anonymous tip, which was later determined to be from McDermott's daughter, a police detective located McDermott's black SUV, which had substantial damage consistent with the accident. McDermott admitted to police that, on the morning of the accident, she drove on the road where the accident occurred to go to a dentist appointment near that location, but she initially denied any involvement in the accident. When the police returned to her home, she admitted that she hit the victim and did not stop because she thought she only hit a dog.

McDermott testified at trial that she had not been driving her vehicle at the time of the accident and lied to the police about being the driver to protect her daughter and boyfriend, who also had access to her vehicle and may have hit the victim. However, the jury also heard recordings of phone calls in which McDermott told her boyfriend that she should have stopped, that no one saw her driving the vehicle or got her license plate, and that she would cast blame on both him and her daughter at trial, as she did not want to alienate the jury by only blaming her daughter. McDermott's daughter testified that McDermott was driving the vehicle around the time the accident occurred and the front of the vehicle was damaged when McDermott returned home. Thus, sufficient evidence supports that McDermott was the driver who hit the victim and failed to stop. *See* NRS 484E.010; *McNair*, 108 Nev. at 56, 825 P.2d at 573 ("[I]it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses.").

*Admission of evidence*

McDermott argues that the district court committed reversible error in admitting irrelevant and highly prejudicial evidence. "We review a district court's decision to admit or exclude evidence for an abuse of discretion." *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). For evidence to be admissible, it must be relevant, i.e., "having any tendency to make the existence of any fact [at issue] more or less probable than it would be without the evidence," NRS 48.015, and its probative value must not be "substantially outweighed by the danger of unfair prejudice," NRS 48.035(1).

McDermott contends that the district court should have excluded all references to blood, DNA, human tissue, or hair found on McDermott's vehicle because those materials had not been tested at the time of trial due to a backlog at the lab. For this same reason, McDermott also argues that photographs of the vehicle depicting these biological materials on it should have been excluded. The district court allowed the crime scene analysts to testify about what they observed on McDermott's vehicle, and McDermott had the opportunity to cross-examine them about the lack of testing and the analysts' inability to determine the source of the materials, i.e., whether they came from the victim, another person, or an animal. We discern no abuse of discretion in the admission of this evidence, as it was relevant to whether McDermott's vehicle was the vehicle that hit the victim and was not unfairly prejudicial.

McDermott next argues that the district court should not have admitted photographs of the victim's body, clothing, and injuries because they were gruesome, highly prejudicial, duplicitous, and had no probative value, given that the defense did not dispute the manner of death. The

SUPREME COURT
OF
NEVADA

(O) 1947A

record reflects that the photographs were not admitted to show the cause of death, but rather to connect the victim's death to McDermott's vehicle. The district court ensured that each photograph was relevant for this purpose, and we conclude that the probative value of the photographs outweighed any prejudicial effect. *See Libby v. State*, 109 Nev. 905, 910, 859 P.2d 1050, 1054 (1993) (providing that even gruesome photographs may be admitted "as long as their probative value is not substantially outweighed by their prejudicial effect"), *vacated on other grounds*, 516 U.S. 1037 (1996).

McDermott also argues that the district court should have excluded the 911 call made by the victim's husband immediately after the accident because it was unnecessary and prejudicial in that the husband was crying during the call. The district court allowed the State to play the 911 call only after the State redacted it to remove much of the crying, and we conclude that any prejudicial effect of the call did not outweigh its probative value. Therefore, the district court did not abuse its discretion in admitting this evidence.

*Jury instruction*

McDermott contends that the district court erred in refusing her proffered jury instruction on two reasonable interpretations and circumstantial evidence. We have previously found no error in rejecting a two-reasonable-interpretations jury instruction where, like here, the jury was properly instructed on reasonable doubt. *See Bails v. State*, 92 Nev. 95, 96-98, 545 P.2d 1155, 1155-56 (1976). Moreover, the proffered jury instruction included the following incorrect statement: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the Defendant guilty has been proved, you must be convinced that the State has proven each fact essential to that conclusion beyond a reasonable doubt."

Because the proffered instruction misstates the law and was otherwise covered by the reasonable-doubt instruction, we discern no abuse of discretion by the district court in refusing to give it. *Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005) (stating that a defendant is not entitled to "misleading, inaccurate[,] or duplicitous" jury instructions); *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (reviewing the district court's rejection of a jury instruction for abuse of discretion or judicial error).

*Prosecutorial misconduct*

McDermott argues that the prosecutor committed misconduct during closing argument by misrepresenting the evidence. In reviewing a claim of prosecutorial misconduct, we must determine "whether the prosecutor's conduct was improper" and, if so, whether reversal is warranted. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). We are not convinced the prosecutor committed misconduct. The prosecutor argued during closing that although McDermott told the police that she left her house for the dentist's office after the accident happened, "there was no way she was going [to the dentist's office] at that time and that it was more likely that the [dentist's] system didn't account for the daylight savings time difference." This statement is based on a detective's testimony that the road to the dentist's office was closed due to the fatal accident at the time McDermott claimed to have driven on it, and the dentist's testimony that he had no independent recollection of McDermott's appointment and was unsure whether his electronic database accounted for daylight savings time. We conclude that the prosecutor made a fair inference from the evidence presented at trial. *See Taylor v. State*, 132 Nev. 309, 324, 371 P.3d 1036, 1046 (2016) (stating that a prosecutor's comments expressing opinions or

beliefs are not improper when they are reasonable conclusions or fair comments based on the presented evidence); *Randolph v. State*, 117 Nev. 970, 984, 36 P.3d 424, 433 (2001) ("The State is free to comment on testimony, to express its views on what the evidence shows, and to ask the jury to draw reasonable inferences from the evidence.").

*Restitution*

McDermott argues that the district court abused its discretion in determining the amount of restitution. Specifically, McDermott objects to the inclusion of the expenses incurred by the deceased victim's son to return early from his international trip to help settle his family's affairs and attend his mother's funeral.

NRS 176.033(1)(c) authorizes a district court at sentencing to "set an amount of restitution for each victim of the offense" when appropriate. An award of restitution under this statute is a sentencing determination, which we review for an abuse of discretion. *Martinez v. State*, 115 Nev. 9, 12-13, 974 P.3d 133, 135 (1999). The purpose of restitution is "to compensate a victim for costs arising from a defendant's criminal act." *Major v. State*, 130 Nev. 657, 660, 333 P.3d 235, 238 (2014).

McDermott argues generally that Nevada law does not contemplate restitution for travel expenses related to a decedent's funeral because such expenses are not a direct consequence of the offense. She relies on *State v. McNeil*, 346 P.3d 297, 303 (Idaho Ct. App. 2014), which held that travel expenses to a victim's funeral are too indirect to be appropriate restitution. The *McNeil* court, however, relied on Idaho statutes and caselaw interpreting those statutes, which differ from Nevada's. Because the authority to grant restitution is statutory, not an inherent power of the court, *Martinez*, 115 Nev. at 10, 974 P.2d at 134, the

issue of whether the restitution award was appropriate here depends on Nevada's statutory language. McDermott provides scant argument in this regard and thus fails to demonstrate that it was an abuse of discretion for the district court to include the travel expenses.[2] Accordingly, we conclude that McDermott has not shown an abuse of discretion by the district court.

For the foregoing reasons, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:     Hon. Carolyn Ellsworth, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk

---

[2]McDermott cites to *Norwood v. State*, 112 Nev. 438, 441, 915 P.2d 277, 279 (1996) (concluding that "the victims' medical costs for the treatment of their injuries directly resulting from the crime are the proper subject of restitution"), and *Simpson v. State*, 712 So. 2d 1, 1-2 (Fla. Dist. Ct. App. 1997) (reversing a restitution award for travel expenses because they were "either indirect, remote or not satisfactorily proven"), but neither decision establishes that the restitution award here was improper.